# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**In Re: Bahamas Island Consortium**
**Limited and Mirko Kovats**

_____                    **Case No: 6:23-mc-2-WWB-DCI**

## ORDER

This cause comes before the Court for consideration on the following motion:

| | |
|---|---|
| **MOTION:** | **Motion to Quash or For Protective Order (Doc. 5)** |
| **FILED:** | **April 26, 2023** |
| | |
| **THEREON** it is **ORDERED** that the motion is **GRANTED**. | |

### I.      Background

Bahamas Island Consortium Limited and Mirko Kovats (collectively, Applicants) filed an ex parte Application for Judicial Assistance to Obtain Evidence for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782.  Doc. 1 (the Application).  Applicants sought information for use in a proceeding in the Bahamas.  *Id.*  In the Application, Applicants requested that they be permitted to "serve the attached discovery" on Tavistock Group, Inc. (TGI); the attached discovery was a Rule 45 subpoena.  *Id.*; Doc. 1-1.  The Court granted the Application and allowed Applicants to "serve [TGI] with the subpoena attached to the Motion[.]"  Doc. 4 at 3.

Applicants served the subpoena on TGI, and TGI responded to the subpoena in due course; TGI stated that it was not the entity Applicants were looking for, identified the entity that likely has the information that Applicants are looking for, and produced responsive documents within its possession, custody, or control.  Doc. 5 at 3.  Applicants then served an amended subpoena on

TGI.  Doc. 5-5.  TGI now requests that the Court quash the amended subpoena.  Doc. 5 (the

Motion).  The Court held a hearing on the Motion on July 25, 2023.

## II.      Standard

A district court has the authority to grant an application for judicial assistance if the

statutory requirements in 28 U.S.C. § 1782(a) are met:

> (1) the request must be made "by a foreign or international tribunal," or by "any
> interested person"; (2) the request must seek evidence, whether it be the "testimony
> or statement" of a person or the production of "a document or other thing"; (3) the
> evidence must be "for use in a proceeding in a foreign or international tribunal";
> and (4) the person from whom discovery is sought must reside or be found in the
> district of the district court ruling on the application for assistance.

*In re Clerici*, 481 F.3d at 1331–1332 (footnotes omitted; quoting 28 U.S.C. § 1782(a)).

But "a district court is not required to grant a § 1782(a) discovery application simply

because it has the authority to do so." *Intel Corp.*, 542 U.S. at 264 (citation omitted).  The Supreme

Court has noted factors for courts to consider in exercising the discretion granted under § 1782(a):

> (1) whether "the person from whom discovery is sought is a participant in the
> foreign proceeding," because "the need for § 1782(a) aid generally is not as
> apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the
> nature of the foreign tribunal, the character of the proceedings underway abroad,
> and the receptivity of the foreign government or the court or agency abroad to U.S.
> federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an
> attempt to circumvent foreign proof-gathering restrictions or other policies of a
> foreign country or the United States"; and (4) whether the request is otherwise
> "unduly intrusive or burdensome."

*In re Clerici*, 481 F.3d at 1334 (quoting *Intel Corp.*, 542 U.S. at 265).  Further, if the "statutory

requirements are met, the District Court deciding the application must still make certain that the

requested discovery complies with the Federal Rules of Civil Procedure." *In re Jagodzinski*, 2019

WL 1112389, at *3 (S.D. Fla. Jan. 15, 2019) (citation omitted).

Federal Rule of Civil Procedure 34(a) requires a party to produce documents responsive to

a request for production so long as those documents are in the party's "possession, custody, or

control."  "Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand."  *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984).  Courts have considered documents to be under a party's control when the party has the "right, authority, or practical ability to obtain the materials sought on demand."  *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 471 (S.D. Fla. Nov. 17, 2011) (citations omitted).

Courts look to the following factors to determine control: "(1) the corporate structure of the party and the nonparties; (2) the nonparties' connection to the transaction at issue in the litigation; and (3) the degree to which the nonparties benefit from the outcome of the litigation."  *Id.*  (citation omitted).  "The burden is on the party seeking discovery to establish that the opposing party has 'control' over documents held by an affiliate."  *In re Zantac (Ranitidine) Products Liability Litigation*, 2021 WL 1522449, at *1 (S.D. Fla. Apr. 16, 2021) (citing *Costa*, 277 F.R.D. at 473 n.2).

## III.    Discussion

As an initial matter, Applicants did not have leave to serve an amended subpoena on TGI. Applicants requested to serve a specific subpoena on TGI, Doc. 1-1, and the Court allowed Applicants to serve that subpoena, Doc. 4 at 3.  Because Applicants did not have leave to serve an amended subpoena on TGI, the amended subpoena is quashed.[1]

The Court also notes the context of the Application and the Motion.  Applicants requested federal court assistance to gather evidence for use in an underlying lawsuit in the Bahamas regarding a dispute over a parcel of real property known as the "South Ocean Beach Property" (South Ocean).  Doc. 1.  Applicants had entered into an agreement to purchase South Ocean but

---

[1] In their response, Applicants request in a footnote that the Court retroactively grant them leave to serve the amended subpoena.  Doc. 6 at 11 n.4.  Requests for relief must be made by motion, so the Court does not consider this request.  Local Rule 3.01(a).

the sellers allegedly reneged on the agreement. *Id.* at 3–4. Applicants premised their Application on the assertion that "Tavistock Group" owned a resort adjacent to South Ocean (the Albany) and that "Tavistock Group" had entered into a joint venture to purchase South Ocean after the sellers reneged on their agreement with Applicants. *Id.* at 7. The Court authorized Applicants to serve the original subpoena on Tavistock Group, Inc. (TGI). Doc. 4.

When TGI was served with the original subpoena, it informed Applicants that it had no interest in the properties at issue in the underlying Bahamian litigation. Doc. 5 at 2. TGI informed Applicants that TGI is not "Tavistock Group"; "Tavistock Group" is a "brand that has been used for marketing purposes across a number of entities." Doc. 16-2 at 1. TGI provided Applicants with the name of the entity involved in the acquisition of South Ocean, Park Ridge Securities Corp. (PRS). Doc. 5 at 3. Despite not having any interest in South Ocean and not being the "Tavistock Group" that Applicants were looking for, TGI turned over the responsive documents it possessed. *Id.* Applicants then served the amended subpoena on TGI, Doc. 5-5, in which Applicants sought to probe whether TGI controls documents possessed by PRS. Doc. 6 at 2. TGI has provided a sworn declaration and a sworn affidavit to the Court which address TGI's control over PRS. Docs. 16-1; 16-2.

Applicants contend that they have sufficiently established that TGI controls documents in PRS's possession. Almost the entirety of Applicants' argument on this point flows from the flawed—or, at least, unsupported—assumption that the references to "Tavistock Group" in various news articles and on a website are references to TGI. *See* Doc. 6 at 11–18. But as explained in TGI's officer's sworn declaration, "Tavistock Group" is a brand name used across a variety of entities for marketing purposes. Doc. 16-2. TGI has no ownership interest in the Albany and TGI is not involved in the joint venture to purchase South Ocean. *Id.* So, most of Applicants' argument

falls flat.  Applicants do point to the fact that TGI and PRS have had two overlapping directors in the past.  However, one of those directors resigned as a director of TGI in 2014 and the other resigned in 2019; TGI and PRS do not currently have any overlapping officers or directors.  *Id.* This is insufficient to meet the first *Costa* factor.  *See In re Zantac*, 2021 WL 1522449, at **7–8 (finding first *Costa* factor not met despite the "fact that the two entities share(d) a CEO" and that the entities had "overlapping directors[.]").  Also relevant to the first *Costa* factor, the Court notes that TGI has established that TGI and PRS have no financial or operational interactions, that TGI and PRS do not exchange information in the usual course of their business, and that TGI and PRS have separate information system infrastructures—all of which weigh against finding the first *Costa* factor met.  Docs. 16-1 at 2; 16-2 at 2; *see In re Zantac*, 2021 WL 1522449, at **7–9.

Applicants assert that they have at least established that they should be able to engage in discovery about discovery to determine whether, or where, TGI and PRS share a common parent. *E.g.,* Doc. 20-1.  Based on this record, the Court is wary of allowing such discovery, especially given that Applicants have been provided the identity of the Bahamian entity that has the documents and information they seek for use in the Bahamian litigation.  *Cf. In re Jagodzinski*, 2019 WL 1112389 at *7 ("[Applicants'] failure to provide a reasonable explanation for his decision to first seek assistance from a United States federal court to obtain discovery—without first attempting to have the French tribunal overseeing his foreign proceeding rule on same—raises the specter of abusive litigation tactics.") (citation omitted).  While there is no exhaustion requirement in § 1782, "a perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis."  *Id.* (citation omitted).  Moreover, TGI's officer averred that TGI's parent and TGI's parent's parent do not have any ownership interest in PRS.  Doc. 16-2 at 1.  In other words, within the corporate

structure, TGI and PRS are not close relations.  *Cf. In re Zantac*, 2021 WL 1522449, at *7 (In considering and finding the first *Costa* factor not met, noting that "[w]ithin the corporate 'family,' Apotex-US and Apotex-Canada are either first cousins or first cousins once removed.").  And even if Applicants could establish that TGI and PRS share a distant common parent, the first *Costa* factor would still not be met.[2]  *See id.* ("It would be incongruous . . . to conclude that two subsidiaries (neither of which may have control over the parent) somehow have control over each other by virtue of having a common parent.").  So, it appears that this inquiry is not a true attempt to establish that TGI controls documents that PRS may possess, but rather is a fishing expedition to see if there is another entity that Applicants can attempt to obtain § 1782 discovery from— which again "raises the specter of abusive litigation tactics." *In re Jagodzinski*, 2019 WL 1112389 at *7; *see In re Kivisto*, 521 F. App'x 886, 888 (11th Cir. 2013) ("The district court also may consider whether the application contains unduly intrusive or burdensome requests, is made in bad faith, for the purpose of harassment, or is part of a fishing expedition.") (cleaned up).  Attempted end-runs around seeking discovery in the underlying proceedings are disfavored in § 1782 proceedings.  *See In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 177 (S.D.N.Y. Aug. 24, 2020) ("It appears that Applicant may be trying to do an end run around proof-gathering restrictions in Brazil. Thus, [] the Court finds, in its discretion, that the third *Intel* factor weighs against granting the Application.").

---

[2] Applicants cite to *In re Gonzalez* in support of their position, but in that case the Court ordered a subsidiary to produce documents held by a parent when there was significant financial and operational interactions between the two companies.  2021 WL 3835180, at **7–8 (S.D. Fla. Apr. 14, 2021).  Here, TGI is not a subsidiary of PRS (nor vice versa) and TGI has established that TGI and PRS do not have significant financial or operational interactions.  Docs. 16-1; 16-2.

Putting aside the first *Costa* factor, the second and third *Costa* factors are clearly not met here.[3]  As to the second *Costa* factor, there is no evidence that TGI has any connection to the transaction at issue.  Indeed, the evidence before the Court evinces that TGI is not connected to any of the transactions at issue in the Bahamian litigation.  Doc. 16-2 at 3.  As to the third *Costa* factor, Applicants have not established that TGI is potentially liable in the Bahamian litigation or otherwise has a financial interest in the Bahamian litigation.  *Cf. Batista v. Nissan North America, Inc.*, 2015 WL 10550409, at *3 (S.D. Fla. Dec. 8, 2015) (finding third factor met where "the parties agree that [the nonparty] may ultimately be responsible for damages to the class[.]"); *see In re Zantac*, 2021 WL 1522449, at *11 ("Plaintiffs have not shown that Apotex-Canada could be liable for a verdict against Apotex-US, which further undercuts the idea that Apotex-US controls the records of Apotex-Canada.").  Again, TGI has established through sworn declaration that it has no financial or other interest in the underlying Bahamian litigation.  Thus, the second and third factors have not been met.

In sum, the Motion is granted because Applicants did not have leave to serve an amended subpoena on TGI.  But beyond that defect, TGI has established that it does not control documents in PRS's possession.  Docs. 16-1; 16-2.  The Court finds the affidavit and the sworn declaration submitted by TGI reliable, and there is no basis for the Court to doubt the veracity of either submission.  Based on this record, even had Applicants requested leave to serve the amended subpoena, it is doubtful that the requested discovery satisfies the *Intel* factors.

---

[3] Because TGI has established that the second and third *Costa* factors are clearly not met, it is questionable whether Applicants' request to engage in collateral litigation about TGI's control of PRS satisfies the third and fourth *Intel* factors.

## IV.   Conclusion

Accordingly, for the foregoing reasons and for the reasons stated at the hearing, it is **ORDERED** that the Motion (Doc. 5) is **GRANTED**, such that Applicants' amended subpoena (Doc. 5-5) is **QUASHED**.

**ORDERED** in Orlando, Florida on August 2, 2023.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE